Parkin *v.* Philadelphia Rapid Transit Co., Appellant.

Argued April 22, 1930. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*James Francis Ryan,* for appellant.—The verdict was excessive: Murphy v. R. R., 292 Pa. 213; Holden v. R. R., 169 Pa. 1; Gail v. Phila., 273 Pa. 275; Goldman v. Mitchell Fletcher, 285 Pa. 116; Zimmerman v. R. R., 297 Pa. 390.

A continuance should have been allowed: Maryland Casualty Co. v. Specht, 83 Pa. Superior Ct. 429.

Plaintiff, after all testimony is ended, cannot introduce a new medical expert who gives new and different testimony as to injuries, which testimony is not in any sense rebuttal of defendant's testimony: Jarvis v. Bell, 296 Pa. 568.

*James F. Masterson,* for appellee.—The verdict was not excessive: Martin v. Letter, 282 Pa. 286; Wilson v. Dressed Beef Co., 295 Pa. 168; Petrie v. Kaufmann & Baer Co., 291 Pa. 211.

Defendant did not care to take the deposition of the witness, because it refused the offer of the plaintiff to take his deposition at the time of the application for the continuance, but realizing the seriousness of the case, the destitute condition of the plaintiff, such tactics were only for the purpose of delay.

Even if there had been some variations in the testimony of Dr. Elmer from that of the doctors who testified in chief, such variations would not, under the circumstances in the instant case, have made the testimony objectionable in rebuttal, since the order of proof is within

the sound discretion of the trial judge: Schuck v. R. R., 283 Pa. 152.

OPINION BY MR. JUSTICE KEPHART, May 27, 1930:

This was an action for damages for injuries caused by the negligence of appellant in running its trolley car into the rear of appellee's truck, which he was operating when the accident took place. The impact knocked the truck a distance of fifteen feet against an iron support of the elevated railway, causing the sharp end of a ladder on the truck to be shoved forward into the small part of appellee's back,—he being on the front seat,—and throwing him off the seat over the steering wheel. The main complaint is to the amount of damages recovered; the verdict was for $46,196 and reduced by the court below to $30,000.

After the accident appellee was taken to a hospital where an X-ray was taken. It was discovered that the result of the accident was a fracture of the left side of the fifth lumbar vertebra, at the arch near the body, with a slight shift of the fourth lumbar vertebra to the left of the fifth. The fifth lumbar vertebra forms a joint with the sacrum immediately above the sacroiliac joint. The blow also caused injury to the coverings of the bone and to the ligaments that support the joints which are involved in the junction of the spinal column with the sacrum. The bruises of the tissues set up a traumatic periositeum.

The result is that there is a constant condition of irritation, and, due to the formation of scar tissue and the rigid contraction of muscles on the left side of the body, there is a limitation of movement which prevents more than a fifty per cent flexion of the body. It is testified that because of this formation, the limitation on plaintiff's ability to bend his body would continue indefinitely. Baking and massaging of the injured part for a period of six months caused little or no improvement. In addition to the physical injuries, it is also shown that

plaintiff has sustained permanent injuries to his nervous system. Dr. Tomlinson testified: "Arthur [the plaintiff] is in a state of depression...... He is also in a state of weakness. He has lost weight, so that instead of weighing 142 or 145 he weighs now 127. His palms perspire. He has a general tremor. He has increased knee reflexes. Those are also indicative of a hypersensitive condition of his nervous system."

As regards future improvement of plaintiff's condition and his ability to continue in gainful occupation, the physician testified that, due to the complications set up, plaintiff's back would not improve so far as its motion was concerned, and that the injury would be permanent, not only with respect to window cleaning, the occupation in which he was engaged at the time of the accident, but also with respect to any occupation in which it was necessary to bend over. At the hospital he was incased in a plaster-of-paris cast from his neck to below his waist and remained in the cast in bed for a period of sixty-six days. After the cast was removed, a heavy steel brace was prescribed for him which he wore continuously day and night until four months before the trial; since then he has been using it except while in bed, and at times when sitting or lying around the house; it is removed for a short period of time, but must be replaced as soon as his back becomes painful. Appellee is a married man,—he will be unable to perform his marital functions. Before the accident he was cheerful and athletic, indulging in football for a number of years. Since the accident his weight has been reduced, he cannot indulge in any sports, is depressed, nervous, melancholy and despondent,—which condition is permanent, being associated with his physical condition.

The pecuniary loss at the time of the trial, including doctor bills, nursing services, and loss of wages, amounted to approximately $5,300. His earning power before the accident was approximately $60 per week in

the window cleaning business, in which he was engaged at that time; since the accident at the maximum it has been $15 per week. The longest time each day he has been able to work since the accident has been about four hours. Most days, however, he has been able to average only two hours. In the five months preceding the trial he has earned $232.

We have stated that it is only in clear cases the court will correct a verdict on the ground of excessiveness: Gail v. Phila., 273 Pa. 275; Goldman v. Mitchell-Fletcher, 285 Pa. 116; Zimmerman v. P. R. R., 297 Pa. 390. To do so in this case would be to substitute our judgment for that of the jury, where the evidence is so contradictory as to the result of the injury, the testimony coming from witnesses who had no interest in the controversy and who were of equal medical standing.

Whether a continuance should be granted because of the absence of a material witness is in the sound discretion of the court below; we will not interfere with its action unless convinced that an injustice has been done. In this case there was no harm done in refusing a continuance, as the matter the witness would have testified to was submitted in a written statement which was read to the jury and into the record. Nor would we criticise calling a physician to rebut the evidence of the defendant in the manner in which it was done in this case. Ordinarily, the order of the admission of the evidence is for the court below, and the defendant was not harmed; plaintiff could not have done otherwise.

Judgment affirmed.